RUFUS Q. BRELAND *v.* MOSES J. O'NEAL.

[40 South. Rep., 865.]

LANDS AND CONVEYANCES. *Deeds. Statute of limitation. Code* 1892, § 2734. *Evidence.*

Where a grantor, intending to convey a fee simple estate, executed a deed by the terms of which he conveyed only a life estate, and the grantee, with the knowledge and without objection from the grantor, took actual possession of the land, believing that he had acquired the fee, and occupied it adversely and continuously for ten years from his entry:

(*a*) His title to the fee was perfected, under Code 1892, § 2734, providing that ten years actual adverse possession of land shall confer title; and

(*b*) Parol evidence is admissible to show the facts.

FROM the chancery court of Harrison county.

HON. THADDEUS A. WOOD, Chancellor.

O'Neal, the appellee, was complainant in the court below; Breland, the appellant, was defendant there. From a decree in complainant's favor the defendant appealed to the supreme court.

Suit by O'Neal to remove cloud from the title to certain land claimed by Breland under quit-claim deeds which he had obtained from the heirs at law of one Catherine Taylor, deceased. The bill alleged that the land in controversy was donated by the United States to the state of Mississippi by act of Congress in 1850; that the state sold to one G. D. C. O'Neal, some time between 1850 and 1865, but that a patent was not issued until 1877; that in 1865, before patent was issued, G. D. C. O'Neal conveyed the land to Catherine Taylor, who in 1867 entered into an agreement with James Cooper, whereby Cooper was to move on and take possession of the land, and that

Catherine Taylor, who was Cooper's cousin, was to live with him. Said agreement was in writing, and is as follows:

"I, Catherine Taylor, do agree to give James Cooper possession of my place and farm utensils, and also the use of cattle, hogs and sheep."

Catherine Taylor lived with Cooper until 1870, when she moved away, and never thereafter asserted any claim to the property. She died in 1871. Cooper, after occupying the land until some time following the year 1878, conveyed it to G. D. C. O'Neal by parol, and by giving him possession and returning to his custody the patent, issued in 1877, in which O'Neal was named as the patentee. In 1892 G. D. C. O'Neal conveyed to complainant, M. J. O'Neal. Complainant based his claim of title on continued adverse possession since 1867 by himself and those under whom he claims, alleging that Cooper, G. D. C. O'Neal and himself had each in turn occupied it, claiming title, and paid taxes on it since that date, and that the continued adverse possession, coupled with an oral agreement between Cooper and Catherine Taylor, whereby Cooper was to become the owner of the property, and Catherine Taylor's acquiescence in Cooper's claim, had ripened into a valid title. Defendant claimed title as vendee of the heirs of Catherine Taylor, denying any claim of title in complainant by virtue of the written agreement, and denying complainant's right to vary the terms thereof by oral testimony, contending that Cooper held as a tenant at will, and on the termination of his tenancy the property reverted to the heirs at law of Catherine Taylor. All the material allegations of the bill were either admitted or substantially proven on the trial. The court declined to permit Cooper to testify as to any oral agreement made between Catherine Taylor and himself, but admitted testimony tending to show adverse possession in the complainant and his vendors, and knowledge on the part of Catherine Taylor of Cooper's claim of title to the property and her acquiescence therein.

*Barber & Mize,* and *Mayes & Longstreet,* for appellant.

First. The first witness introduced by the complainant was James Cooper himself, who, at the time he gave his testimony, was seventy-five years old, and Cooper, on the request of complainant, produced and filed as exhibit 1 to his deposition, a writing under which he claimed title to the land. That writing runs as follows:

"*July* 29, 1867.

"I, Catherine Taylor, do agree to give James Cooper possession of my place and farm utensils, and also the use of cattle, hogs and sheep."

The court will see, therefore, that this paper is nothing but an executory agreement to give James Cooper the possession of the place, and does not bargain to him or purport to convey to him the title.

Second. In order to fortify that paper and avoid the difficulties with which they were confronted (since Cooper's testimony was held to be incompetent by the court as to all transactions between himself and Catherine Taylor during her lifetime, and disregarded it), complainant introduced the testimony of Mrs. Cooper, wife of James Cooper, who was a witness, as claimed, to the transaction between Catherine Taylor and James Cooper. The court will please note that this is the only witness who professes to speak precisely to the specific terms of the agreement between the two parties, and she is the leading witness of complainant, whose testimony was by him deliberately and advisedly introduced in this cause.

Mrs. Cooper says that Miss Taylor intended that Cooper should own the land; "for that to be his home as long as life, if he should wish, and no one should ever trouble him."

Again, she was asked in regard to this transaction how long the land was intended by Miss Taylor to be her husband's, and she replied "as long as he should live, that no one should ever have it."

Thus this witness, the wife of James Cooper himself, and complainant's principal witness, expressly testifies that the understanding was that James Cooper was to have the place as long as he lived.

The court will note that notwithstanding the explicit statement of the witness on this point, complainant made no effort to prove that the fact was otherwise. If, therefore, it be conceded that complainant can introduce parol testimony at all to add to or alter the terms of the written paper which was introduced in evidence, that testimony shows that the parties intended to give and take a tenure for life only.

James Cooper is still alive (at least, he was when this case was tried), although seventy-five years old.

His occupancy of the land, therefore (and the occupancy of his sub-vendees), was consistent with the claim of the heirs of Catherine Taylor as remaindermen.

There has never been any adverse possession, because under the terms of their understanding, as proved by the complainant himself, the parties who were in possession had a right to occupy it until James Cooper should die, and still the heirs of Catherine Taylor would have a right to the land on his death.

Independently of the testimony of Mrs. Cooper, the paper itself, produced and filed by the complainant as shown above, is in its effect merely made James Cooper and his assigns tenants at will. The man held under a written agreement, and we submit that parol evidence is not competent to add to, alter, or vary the terms of that agreement. It is well settled that mere permissive possession, however long continued, can never ripen into a title by adverse possession. 1 Am. & Eng. Ency. L., 794, and numerous authorities cited.

*Ford & White,* and *Green & Green,* for appellee.

Complainant does not claim title to this land by virtue of the paper signed by Catherine Taylor after Cooper moved on the place giving him possession, but by virtue of the parol agree-

ment made before he moved on the land, coupled with adverse possession for thirty-five years under this parol sale, during the last twenty-five years of which time they held possession under the patent as well.

Complainant had to rely for evidence of this parol agreement on the testimony of five people, fifty-nine, sixty-nine, seventy-two, seventy-five and eighty-three years of age, respectively, all of whom were illiterate, as well as infirm by reason of age, and although the testimony of James Cooper as to the details of this parol agreement was ruled out, yet the fact is clearly established that there was a parol agreement to the effect that Miss Taylor was to give him the land in consideration of certain services, which he performed, and that he went into possession under this agreement.

That his possession was not limited to the land actually occupied, but extended to the whole tract covered by the parol agreement, is settled not only by a well considered line of decisions of other courts, but by the supreme court of this state as well. *Niles* v. *Davis,* 60 Miss., 750.

In *Niles* v. *Davis,* it was held that a parol vendee entering under his purchase was as against his vendor and those claiming under him in possession of the whole land, though only a part should be occupied.

This rule, though announced in that case for the first time in this state, had been silently recognized in *Davis* v. *Bowmar,* 55 Miss., and has been distinctly formulated and applied in other states.

The rule that the statute of limitations never runs against the government does not apply in this case. The title was vested in the state of Mississippi by act of Congress, and the state through its officers had sold it to O'Neal and he to Catherine Taylor, so the state held only the naked legal title. By the code of 1857, p. 492, sec. 25, reinacted by the code of 1871, p. 473, sec. 2169, the statute of limitations is made to run against the state, and it had been expressly held by this court that under

the codes of 1857 and 1871 the title to land belonging to the state could be acquired by adverse possession just as the land of an individual. *Clements* v. *Anderson,* 46 Miss., 581; *Green* v. *Irving,* 54 Miss., 450; *Schneider* v. *Hutchinson,* 76 Am. St. Rep., 474; 76 Am. St. Rep., 488, 489, 490.

WHITFIELD, C. J., delivered the opinion of the court.

The instrument executed by Catherine Taylor to James Cooper, of date July 29, 1867, conveys, as the learned counsel for the appellant contend, nothing but a life interest, so far as its terms are concerned; and we further agree with counsel for the appellant that, if the case turned upon the mere construction of this instrument, all the testimony as to what it means would be incompetent as varying, altering, or modifying the terms of a written instrument. But it is made perfectly certain by the overwhelming weight of the testimony that Catherine Taylor knew that Cooper claimed the property as his own; that she intended to give him the fee, as she stated to several witnesses; and that, with full knowledge of his adverse claim, she never asserted any right of her own to the land, but abandoned it, and moved off and built herself a house elsewhere, and died recognizing Cooper's claim to the land. The testimony shows Cooper's adverse claim to the land for from ten to twelve years, and the statute of limitations ran in favor of Cooper and those claiming under him for a very much longer time. Whatever, therefore, the deed, taken by itself as if it were the whole case, might import, it must certainly be true that if Miss Taylor understood the deed to convey a fee; understood Cooper to claim the fee, and always acquiesced in that claim, this testimony is competent for the purpose of characterizing Cooper's possession as adverse, and as recognized as adverse by Miss Taylor. If, to put it differently, there were nothing in this case but the instrument referred to, and both parties claimed under that, leaving nothing but the construction of the instrument for the court, appellant should prevail; but, when this testimony is

viewed as characterizing the possession of Cooper as adverse, and Miss Taylor's conduct as conduct acquiescing in and recognizing that adverse possession, it is clearly competent for that purpose. May not one make a deed which in fact, according to its terms, conveys but a life estate, and yet, notwithstanding the execution of such an instrument, actually have meant to give a fee, enabling the grantee to claim adversely from the date of the instrument? And may not evidence be introduced to show such adverse possession, asserted by the grantee and acknowledged by the grantor? Undoubtedly; and that is this case. If we had nothing but the instrument in this case, and its construction, and testimony offered, not to show adverse possession, but to show that the instrument conveying a life estate was really meant to convey a fee, such testimony would be clearly incompetent. But where the purpose of the parol testimony is not to vary or alter the character of the estate as conveyed by the instrument, but to show that, notwithstanding the instrument, adverse possession was asserted on one side and acquiesced in on the other, such testimony for the last purpose is manifestly competent. We think the testimony shows title by adverse possession in appellee.

*The decree is affirmed.*